## UNITED STATES v. HURST.

(District Court, D. Wyoming. October 29, 1924.)

No. 1363.

**1. Internal revenue ⊜⟲22 —Decisions of department not binding on courts.**

Decisions of department, while entitled to highest respect and consideration, are not binding on the courts.

**2. Internal revenue ⊜⟲7—Mining claim, based solely on discovery and location, "gift," exempt from income tax.**

Under Rev. St. §§ 2318–2320, 2324, 2329 (Comp. St. §§ 4613–4615, 4620, 4628), and Act Feb. 11, 1897 (Comp. St. § 4635), transaction by which a mineral claimant acquires a possessory right based on discovery and location, without patent, and without any direct consideration passing to the government, entitling him to removal of the mineral, as petroleum, to exhaustion, partakes more of the nature of a "gift" than any other method of acquiring title to property, there being neither a sale, nor acquisition of title by occupancy, so that, under Revenue Act Sept. 8, 1916, §§ 2 (a), 4, value of the property is exempt from income tax.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gift.]

**3. Statutes ⊜⟲245 — Revenue statutes construed against government.**

In case of doubt, revenue statutes are construed against the government and in favor of the citizen.

**4. Internal revenue ⊜⟲25—United States not estopped to claim additional income by department's answer to inquiry and delay.**

The government is not estopped to claim any income tax to which it is entitled because, while the matter of a tax was in process of adjustment, the department made answer to a supposititious case, on which a later return purports to have been filed, and thereafter there was delay by the department for some time in making any further claim.

At Law. Action by the United States against James T. Hurst. Heard on demurrers to defenses. Overruled in part, and sustained in part.

Albert D. Walton, U. S. Dist. Atty., of Cheyenne, Wyo. (Nelson T. Hartson, Sol. of Internal Revenue, and Thomas H. Lewis, Jr., Sp. Atty. Bureau of Internal Revenue,

both of Washington, D. C., on the brief), for the United States.

Arthur F. Friedman, of Denver, Colo., for defendant.

KENNEDY, District Judge. This is a suit in which the United States seeks to recover income tax alleged to have accrued during the year 1917 and which remains unpaid. The petition is met by answer, which presents three separate defenses—the first being substantially a general denial; the second, a defense in law to the effect that, because of the undisputed circumstances under which the property which is sought to be taxed was secured, it is not taxable as income; and the third that, on account of the actions of the department in dealing with the taxpayer, no further or other tax than that already paid can be enforced. To each of the two affirmative defenses a demurrer has been interposed by the government, which demurrers have been argued and submitted, and in this situation the cause is now before the court.

The admitted facts, for the purpose of considering the demurrers, are substantially as follows: One Mary E. Hurst, the wife of the defendant, with certain other qualified persons, made mineral locations on government owned lands in what was afterward known as the Elk Basin oil field in this state during the year 1915. Thereafter the locators, without expense to themselves, secured the exploitation of their claims by third parties, reserving to themselves royalty rights. Oil was discovered during the same year in commercial quantities. In 1917 Mrs. Hurst sold and disposed of her interest in said claims for a consideration of $100,000. On August 17th of that year, Mrs. Hurst died, upon which her husband, the defendant here, took possession of all her property; no administration being had of her estate. The defendant filed an income tax return for Mrs. Hurst, covering that portion of the year 1917 before her death, in which apparently no portion of the $100,000 so received for sale of her mineral rights aforesaid was included. Thereafter, and in the year 1919, in consequence of some correspondence with the department, the defendant filed an amended return, in which he included as income substantially one-third of the amount received from such sale. Nothing further being heard from the department, Hurst proceeded to pay the debts of the deceased and to distribute the property. The department,

after considerable delay, made demands upon the defendant for additional tax, based upon the entire amount of the proceeds received from the sale of Mrs. Hurst's mineral rights, which carried the matter into the department for a consideration of the legal principles involved, and upon which various hearings were had, finally resulting in a ruling of the department that Hurst was liable for a tax upon the full amount received upon the theory that it was income.

The government's claim of liability as to this defendant is based upon section 3467 of the United States Revised Statutes (Comp. St. § 6373), which reads as follows:

"Sec. 3467. Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

The liability of the defendant as a proposition of law under this section was previously sustained by this court as against a demurrer to the petition. It is admitted by counsel in their arguments and briefs that the second defense contained in the answer and to which demurrer has been interposed, raises the question as to the nature of the property received by Mrs. Hurst through sale of her interest in the mineral claims, directed to the point as to whether or not the money received is taxable as income under the revenue laws, or is exempt from such taxation under that provision which exempts the value of property acquired by gift, bequest, devise, or descent. The government contends that the money received represented and was income, and therefore taxable, while the defendant contends that it represented the sale of property acquired by gift and therefore not taxable as income, except as to any increase in the sale price over its value when received.

The amended return of the defendant, including substantially one-third of the amount received upon the sale, was based upon the theory that between the date of the discovery and the date of the sale oil had risen in price from practically $1 a barrel to $1.50 a barrel, and that therefore in fairness to the government he should account for the income or profit from the property disposed of, acquired through gift. However, that particular phase of the case is not important in the consideration of the questions here involved.

This court keenly realizes the importance of the questions involved, and exceedingly regrets that the continued press of court litigation forbids the devotion of that time to its solution which it rightfully deserves, but must rest content in being able with reasonable expedition to send it on its way to a final solution in the courts of last resort. In beginning the consideration of the question presented, an examination of the mining statutes is first necessary. The following sections of the United States Revised Statutes appear to be the basis of the respective contentions:

"Sec. 2318. In all cases lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law.

"Sec. 2319. All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States.

"Sec. 2320. * * * But no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located. * * *

"Sec. 2324 (as amended by Act Jan. 22, 1880). * * * On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the tenth day of May, eighteen hundred and seventy-two, ten dollars' worth of labor shall be performed or improvements made by the tenth day of June, eighteen hundred and seventy-four, and each year thereafter, for each one hundred feet in length along the vein until a patent has been issued therefor; but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been

made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location. * * *

"Sec. 2329. Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz, or other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims; but where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands."

Comp. St. §§ 4613–4615, 4620, 4628.

Also Act Feb. 11, 1897, c. 216, 29 Stat. 526 (Comp. St. § 4635):

"That any person authorized to enter [public] lands under the mining laws of the United States may enter and obtain patent to lands containing petroleum or other mineral oils, and chiefly valuable therefor, under the provisions of the laws relating to placer mineral claims: Provided, that lands containing such petroleum or other mineral oils which have heretofore been filed upon, claimed, or improved as mineral, but not yet patented, may be held and patented under the provisions of this act the same as if such filing, claim, or improvement were subsequent to the date of the passage hereof."

The Revenue Act under which the tax is assessed is that of September 8, 1916, 39 Stat. 756, the pertinent provisions of which read as follows:

"Sec. 2. (a) That, subject only to such exemptions and deductions as are hereinafter allowed, the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"Sec. 4. The following income shall be exempt from the provisions of this title: * * * The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included as income)."

[1] Before beginning the consideration of these statutes, it may be said in passing that the department has had the questions involved here under consideration and has ruled against the contentions of the defendant. While the decisions of the department are entitled to the highest respect and consideration, they are nevertheless not binding upon the courts. Hastings v. Whitney, 132 U. S. 357, 10 S. Ct. 112, 33 L. Ed. 363. The departmental decisions have heretofore been given due consideration, but, inasmuch as the basis of the final decision is substantially urged by counsel for the government here as reasons for sustaining the demurrer to the second defense, it will not be necessary in the opinion of the court to discuss the final decision of the department independent of the legal questions raised by the demurrer.

The court is not without precedent in seeking a construction of the mining statutes above quoted, as to the character of property right involved, as federal courts and particularly the Supreme Court have spoken frequently and fully upon the subject. It would not seem necessary to review all of these decisions, for the reason that the Supreme Court in the case of Union Oil Co. v. Smith, 249 U. S. 337, 39 S. Ct. 308, 63 L. Ed. 635, has made a general review and collation of those authorities. The opinion in that case will therefore be quoted from somewhat at length, beginning on page 345 (39 S. Ct. 310):

"Under this legislation petroleum for many years was regarded as a mineral, although not specially mentioned as such, and claims to oil lands were disposed of by the Land Department under the provisions of law relating to placer claims, with a single exception afterwards overruled. Union Oil Co., 23 L. D. 222, decided August 27, 1896; Union Oil Co. (on review), 25 L. D. 351, decided November 6, 1897. It was in order to obviate the effect of the former of these two decisions that Congress passed the Act of February 11, 1897, c. 216, 29 Stat. 526, which declared: 'That any person authorized to enter lands under the mining laws of the United States may enter and obtain patent to lands containing petroleum or other mineral oils, and chiefly valuable therefor, under the provisions of the laws relating to placer mineral claims'—with a proviso saving petroleum land theretofore filed upon, claimed or improved as mineral but not yet patented. See House Rep. No. 2655, 54th

Cong. 2d Sess.; 29 Cong. Rec. Pt. 2, p. 1409; Burke v. Southern Pacific R. R. Co., 234 U. S. 669, 678.

"Aside from the suggested effect of the Act of 1903, it is clear that in order to create valid rights or initiate a title as against the United States a discovery of mineral is essential. Section 2320, Rev. Stats.; Waskey v. Hammer, 223 U. S. 85, 90. Nevertheless, section 2319 extends an express invitation to all qualified persons to explore the lands of the United States for valuable mineral deposits, and this and the following sections hold out to one who succeeds in making discovery the promise of a full reward. Those who, being qualified, proceed in good faith to make such explorations and enter peaceably upon vacant lands of the United States for that purpose are not treated as mere trespassers, but as licensees or tenants at will. For since, as a practical matter, exploration must precede the discovery of minerals, and some occupation of the land ordinarily is necessary for adequate and systematic exploration, legal recognition of the pedis possessio of a bona fide and qualified prospector is universally regarded as a necessity. It is held that upon the public domain a miner may hold the place in which he may be working against all others having no better right, and while he remains in possession, diligently working towards discovery, is entitled—at least for a reasonable time—to be protected against forcible, fraudulent, and clandestine intrusions upon his possession. Zollars v. Evans, 5 F. 172, 173; Crossman v. Pendery, 8 F. 693, 694; Johanson v. White, 160 F. 901; Hanson v. Craig, 161 F. 861, 863; 170 F. 62, 65; Gemmell v. Swain, 28 Mont. 331, 335; New England, etc., Oil Co. v. Congdon, 152 Cal. 211; Whiting v. Straup, 17 Wyo. 1, 19, 23; Phillips v. Brill, 17 Wyo. 26, 38.

"And it has come to be generally recognized that while discovery is the indispensable fact and the marking and recording of the claim dependent upon it, yet the order of time in which these acts occur is not essential in the acquisition from the United States of the exclusive right of possession of the discovered minerals or the obtaining of a patent therefor, but that discovery may follow after location and give validity to the claim as of the time of discovery, provided no rights of third parties have intervened. Creede & Cripple Creek Mining Co. v. Uinta Tunnel Mining Co., 196 U. S.

337, 345, 348–352; Weed v. Snook, 144 Cal. 439, 443.

"In the California courts the right of a locator before discovery while in possession of his claim and prosecuting exploration work is recognized as a substantial interest, extending not only as far as the pedis possessio but to the limits of the claim as located; so that if a duly qualified person peaceably and in good faith enters upon vacant lands of the United States prior to discovery but for the purpose of discovering oil or other valuable mineral deposits, there being no valid mineral location upon it, such person has the right to maintain possession as against violent, fraudulent, and surreptitious intrusions so long as he continues to occupy the land to the exclusion of others and diligently and in good faith prosecutes the work of endeavoring to discover mineral thereon. Miller v. Chrisman, 140 Cal. 440, 447 (case affirmed 197 U. S. 313); Weed v. Snook, ubi supra; Merced Oil Mining Co. v. Patterson, 153 Cal. 624, 625; 162 Cal. 358, 361; McLemore v. Express Oil Co., 158 Cal. 559, 562.

"To what extent the possessory right of an explorer before discovery is to be deduced from the invitation extended in section 2319, to what extent it is to be regarded as a local regulation of the kind recognized by that section and the following ones, and to what extent it derives force from the authority of the mining states to regulate the possession of the public lands in the interest of peace and good order, are questions with which we are not now concerned. Nor need we stop to inquire whether the right is limited to the ground actually occupied in the process of exploration, or extends to the limits of the claim. These questions and others that suggest themselves are not raised by the present record, which concerns itself solely with the rights asserted by the defendant under the act of 1903. Whatever the nature and extent of a possessory right before discovery, all authorities agree that such possession may be maintained only by continued actual occupancy by a qualified locator or his representatives engaged in persistent and diligent prosecution of work looking to the discovery of mineral.

"But, by the provisions of the Revised Statutes above cited, a discovery of mineral by a qualified locator upon unappropriated public land initiates rights much more substantial as against the United States and

all the world. If he locates, marks, and records his claim in accordance with section 2324 and the pertinent local laws and regulations, he has, by the terms of section 2322, an exclusive right of possession to the extent of his claim as located, with the right to extract the minerals, even to exhaustion, without paying any royalty to the United States as owner, and without ever applying for a patent or seeking to obtain title to the fee, subject, however, to the performance of the annual labor specified in section 2324, for upon his failure to do this the claim is open to relocation by others at any time before resumption of work upon it by the original locator. If not content to rest upon the right conferred by section 2322, the qualified locator may obtain a patent for his claim by complying with the conditions prescribed by sections 2325 and 2326.

"But, even without patent, the possessory right of a qualified locator after discovery of minerals upon the claim is a property right in the full sense, unaffected by the fact that the paramount title to the land is in the United States (Rev. Stats. § 910), and it is capable of transfer by conveyance, inheritance, or devise. Forbes v. Gracey, 94 U. S. 762, 763, 767; Belk v. Meagher, 104 U. S. 279, 283, 285; Del Monte Mining Co. v. Last Chance Mining Co., 171 U. S. 55, 78; Elder v. Wood, 208 U. S. 226, 232. Actual and continuous occupation of a valid mining location based upon discovery is not essential to the preservation of the possessory right. The right is lost only by abandonment, as by nonperformance of the annual labor required by section 2324. Belk v. Meagher, 104 U. S. 279, 283, 284; Black v. Elkhorn Mining Co., 163 U. S. 445, 450; Farrell v. Lockhart, 210 U. S. 142, 147; Bradford v. Morrison, 212 U. S. 389, 394."

[2] From this opinion we draw the following conclusions as established principles of law: Petroleum, in connection with public lands under the statutes above quoted, belongs to the United States, and the right to it is secured by another through the placer mining laws. The right to such minerals, in a person other than the government, is based upon discovery. The statutes hold out a reward to the discoverer. In conducting explorations for mineral, the explorer is in a position equivalent to a licensee or tenant at will. While making exploration under location, the explorer is entitled for a reasonable time at least to protection to his possession from interference from other prospective locators. The relative time of location and discovery is not material, as, if location precedes discovery, the claim is given validity as of the time of discovery. No property right is acquired by virtue of a location alone, unless preceded or supplemented by discovery. A qualified person under a proper location and discovery, may proceed to extract the mineral even to exhaustion, without paying any royalty to the United States as owner, or without applying for a patent. A possessory right of a qualified locator upon discovery is property and may be transferred, inherited or devised. The right may be lost by abandonment.

We further observe from an examination of section 2324, United States Revised Statutes, supra, that certain annual assessment work is required, but that the government does not require the locator and discoverer to perform assessment work in order to maintain possession as against the government itself, but as against other prospective locators. In other words, the government does not say, "But if you do not do these things, I will take the claim away from you, and you must do them in order to withhold the claim against me." The government's position is as asserted by the statute, that the locator and discoverer must do certain things to protect himself against third parties.

As the first contention presented by counsel for the government involves the theory that the right acquired by the locator and discoverer is in the nature of a sale by the government to him, this will first be considered. Section 2319, supra, provides that mineral deposits in lands belonging to the United States are free and open to exploration and purchase and the lands in which they are found to occupation and purchase. To what does the term "purchase" here allude?

This court has been forced to the conclusion that it refers to the procedure outlined for securing a patent to mineral lands. In the case of Teller v. United States, 113 F. 273, 51 C. C. A. 230, the Court of Appeals of this circuit has seemed to draw distinction between the acquisition of the mineral as distinguished from the land in which it is found, and treats the latter transaction as being within the classification of a sale. Speaking through Judge Adams, the following language is used on page 280 (51 C. C. A. 237): "The claimant may be entirely satisfied with his possessory title, and be

neither able nor willing to perform the further acts or pay the further consideration requisite to securing the equitable or legal title. For reasons of public policy, and for the purpose of encouraging the mining industry, the United States gratuitously grants the privilege to any citizen, or person having declared his intention to become a citizen, of locating a claim for mineral lands and working the same for precious metals; but it has not seen fit to give away the land containing the minerals, but, on the contrary, has adopted the policy of selling the same to the locator, if he desires to purchase, on terms fixed by the acts of congress."

In the case of Black v. Elkhorn Mining Co., 163 U. S. 445, 16 S. Ct. 1101, 41 L. Ed. 221, the Supreme Court uses the term "purchase" in connection with the acquiring of patent, and on page 451 (16 S. Ct. 1103) says: "It is granted to the locator and to his heirs and assigns, and there is no condition that hampers the right to convey by incumbering it with an inchoate right of dower. And until he does some act towards paying the purchase money he obtains no vested right of purchase or claim to a patent."

The same court in Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 12 S. Ct. 877, 36 L. Ed. 762, in speaking of mining rights such as are in controversy here, quotes with approval a departmental ruling, at page 430 (12 S. Ct. 878): "The first, being an absolute grant by purchase and patent without condition, is not defeasible, while the second, being a mere right of possession and enjoyment of profits without purchase and upon condition, may be defeated at any time by the failure of the party in possession to comply with the condition, viz.: to perform the labor or make the annual improvements required by the statute. The equitable title accrues immediately upon purchase, for the entry entitles the purchaser to a patent, and the right to a patent once vested is equivalent to a patent issued." Therefore, so far as the term "purchase" as found in the statute itself is concerned, we do not find that it has been applied by the courts to the right acquired by a claimant by virtue of his discovery.

Counsel for the government, however, earnestly argue that it must be sustained upon the theory of a sale, because of the consideration arising from the benefit to be secured to the state through the development of the public resources. In this respect they quote from the case of Mining Co. v. Tunnel Co., 196 U. S. 337, 25 S. Ct. 266, 49 L. Ed. 501, in which the court has in turn quoted from Lindley on Mines, as tending to sustain their contention that the grant is based primarily upon the general prosperity of the state. The quotation from the foregoing case is found on page 345 (25 S. Ct. 270), and reads as follows:

"Discovery in all ages and all countries has been regarded as conferring rights or claims to reward. Gamboa, who represented the general thought of his age on this subject, was of the opinion that the discoverer of mines were even more worthy of reward than the inventor of a useful art. Hence, in the mining laws of all civilized countries the great consideration for granting mines to individuals is *discovery*. 'Rewards so bestowed,' says Gamboa, 'besides being a proper return for the labor and anxiety of the discoverers, have the further effect of stimulating others to search for veins and mines, on which the general prosperity of the state depends.' "

It seems to us, however, that an examination of this statement of the law carries with it nothing stronger than a mere incident resulting in a benefit to the state, rather than the strength of the consideration passing between the state and the mineral claimant. Other cases are cited and relied upon to sustain the theory. As an example, Morris v. Newark, 76 N. J. Law, 555, 70 A. 194, in which the matter of elevating railroad tracks was considered as being of a benefit to the public at large, and therefore afforded a sufficient consideration to create a binding contract. A benefit derived in such a case, however, is immediate and direct, as distinguished from one which in any event would depend upon the general prosperity of the state. In the case of Stanley v. Schwalby, 162 U. S. 255, 16 S. Ct. 754, 40 L. Ed. 960, the sufficiency of the consideration in that case appears to have been discussed in connection with a deed to the United States reciting a valuable consideration. So that upon this phase of the case the court has no cases before it which would seem to justify the adoption of the theory of sale, simply because of the fact that as between the government and a mining claimant the possible general prosperity of the nation would result and that this should therefore be recognized as a sufficient consideration to sustain it. It may have been the motive to inspire the legislation.

Counsel for the government, however, do

not rely solely upon the theory of acquisition of a mining claim through purchase and sale, but assert that the mineral claimant in this case may have acquired her title by occupancy, and advance in their brief the following ingenious argument to that end: "As has already been shown if this title was acquired by alienation it was acquired by sale and not by gift. However, it is perhaps more nearly correct to say that she acquired her title by occupancy. It is true that title by occupancy cannot be acquired unless the property occupied is without an owner, and that the public domain is of course not without an owner. It may be considered, however, that Congress by the act involved has abandoned its rights in oil and precious metals to the discoverer and that title to the discoverer comes by virtue of his occupancy."

The difficulty with this argument is that in its inception it begs the question, in that it admits that title by occupancy cannot be acquired unless it is without an owner. Certainly the mineral resources of the country are not without an owner, as Congress in section 2319, supra, has declared that mineral deposits belong to the United States. In support of their contention counsel themselves quote from Burns v. Schoenfeld, 1 Cal. App. 121, 81 P. 713, in which opinion the following language is used: "That where things are found that have no owner they belong, as in a state of nature, to the first occupant or fortunate finder." That court relies upon Blackstone and Kent to sustain the above conclusion.

As to the theory that the government has abandoned its rights in oils and precious metals to the discoverer, the doctrine of abandonment as laid down in the books is diametrically opposed in this kind of case by the fact that the government by legislation has exercised a direct and affirmative control over its mineral possessions. This court is impressed with the idea that the term "occupancy" as used in the books concerning mineral claims does not refer to the generally accepted use of the term "occupancy" as applied to the acquiring of title to property, but more particularly to one of the necessary elements in holding rights which have been acquired by discovery.

Having arrived at the conclusion that the transaction involved does not partake of the nature of a sale, in that the term "purchase," as found in the statute, has been applied to the procedure for patent, and that neither can it be sustained upon the consideration of the general benefit to the public at large and that no direct consideration passes from the locator and discoverer to the government, we come to consider the theory of the defendant, that the transaction is in the nature of a gift. Funk & Wagnall's New Standard Dictionary, 1923, defines "gift" as follows: "That which is given; something voluntarily bestowed without expectation of return; a donation; present." Bouvier's Law Dictionary says as to its legal meaning: "A voluntary conveyance; that is, a conveyance not founded on the consideration of money or blood."

In most respects, at least, the transaction involved here would seem to come within the scope of the latter definition. No analogous case has been cited, nor has any been found, which would serve as a full and complete example in sustaining the theory that the transaction is in the nature of a gift. One that is at least persuasive is that of Barnes v. Poirier, 64 F. 14, 12 C. C. A. 9, in our own circuit, in which Judge Sanborn construed what is known as the "soldiers' additional homestead rights" (commonly known in the Western country as "soldier scrip"), which were those rights of additional entry granted to the soldiers of the Civil War who had already made homestead entry of a limited acreage. Here the court, in following a long line of decisions, held that the grant was absolute and assignable, and in the nature of a gift, using the following language at page 18 (12 C. C. A. 13): "It was an unfettered gift in the nature of compensation for past services. It vested a property right in the donee." It therefore would seem, in some instances at least, the government has made grants of its public resources which have been construed as being in the nature of a gift.

Counsel for the government contend, however, that the theory of a gift cannot be sustained as to mineral claims, because of the fact that there are conditions subsequent in that (quoting from brief), "it is dependent upon a condition subsequent, namely, the discoverer of oil do certain assessment work annually. Unless this work is done, the grant is invalid." The difficulty with this theory, as we have heretofore touched upon, is that the annual assessment work is not a condition as between the mineral claimant and his government, affecting his title, but only that to protect himself against other qualified locators he must do certain things. In addition, there are undoubtedly many

forms of gifts to which conditions are attached but which nevertheless do not lose their nature as gifts.

In the case of Neale v. Neales, 9 Wall. (76 U. S.) 1, 19 L. Ed. 590, the Supreme Court recognizes a condition as being attached to a gift, the expression of the court being fairly epitomized in the syllabus as follows: "3. Equity protects a parol gift of land equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property. And this is particularly true where the donor stipulates that the expenditure shall be made, and by doing this makes it the consideration or condition of the gift." So that, even though the condition applying to the grant between the United States and the mineral claimant directly affected the latter's title as against the government, it would not necessarily mean that the grant because of a condition imposed would thereby lose its nature as a gift.

Reward in some form or other is frequently the basis of a gift, as in the case of Barnes v. Poirier, supra, the court recognized the grant to be in the nature of a gift to old soldiers as compensation for past services to their government. If there could be a reward offered to old soldiers for past services to the government, upon the same theory why cannot a reward be offered to a discoverer of mineral deposits? The result of the endeavor in each case is a benefit to the nation.

This court is not concerned in what may be saved or lost to the government by virtue of a construction of the law, but has arrived at the conclusion that a transaction in which the possessory title of a mineral claimant based upon discovery, without patent and without any direct consideration passing to the government, entitling the claimant to a removal of the mineral even to exhaustion, partakes more of the nature of a gift than that of any other method of acquiring title to property known to the law. Had Congress desired to exclude from its exemption of gifts any particular kind, it would have so declared.

[3] Furthermore revenue statutes must be more strongly construed against the government and in favor of the citizen in case of doubt. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211. For the reasons stated, the demurrer to the second defense will be overruled.

[4] In regard to the demurrer to the third defense, this court is of the opinion that it must be sustained. Had there been an effected compromise between the department and the taxpayer, it must have been sustained as against an attack in the courts. United States v. Kaufman, 96 U. S. 567, 24 L. Ed. 792. Here the matter was at all times in the process of adjustment, and merely because the department made answer to a supposititious case, upon which the later return purports to have been filed, does not and should not estop the government from asserting its claim to the tax. Neither does the nature of the statute, so far as the pleadings reveal the situation in the case, relieve a person charged with the payment of federal taxes on the estate of a deceased person from liability, simply on account of some delay in the department. The relationship between the government and the taxpayer in this case is not that of a proprietor and one with whom it is doing business in a contractual sense, but is that between sovereign and subject, in which the taxpayer is charged with the highest degree of responsibility. The taxpayer was not free to rest upon the seeming inactivity or delay of the department but should have reasonably pursued his activities to securing an adjustment of the matter before making distribution of the estate.

For the reasons stated, the demurrer to the third defense will be sustained, reserving to the parties in all of the premises herein considered their proper exceptions.