Mary Elizabeth BEATTIE, a minor,
Through her next friend, J. Patrick
BEATTIE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

David J. GREISEN, By and Through
his father and natural guardian,
Ronald E. GREISEN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Catherine Anne BEATTIE, a minor,
Through her next friend, J. Patrick
BEATTIE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. A85–209 Civil, A85–359 Civil
and A85–387 Civil.

United States District Court,
D. Alaska.

March 13, 1986.

**482**

David G. Shaftel, Ron Zobel and Steven O'Hara, Bankston & McCollum, Anchorage, Alaska, for plaintiffs.

F. Michael Kovach, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

(Motion for Summary Judgment by United States of America Granted)

HOLLAND, District Judge.

## I.

## FACTUAL BACKGROUND

In 1969 after Alaska received $900 million for Prudhoe Bay oil leases, Governor Keith Miller proposed an "Alaska Permanent Resources Fund" to be invested and its earnings used to fund future state budgets. The plan did not receive legislative support. Instead these funds and some $400 million in interest were used by the state in its operation and capital budgets. The "disappearance" of this fund caused a public outcry which resulted in the creation of a state savings account. The bill creating this account was vetoed by Governor Jay Hammond because it ran afoul of the Constitution of the State of Alaska which prohibits the dedication of public revenue for special purposes. Thereafter, a constitutional amendment, title IX, section 7, was passed by the voters to overcome this impediment. The Alaska Permanent Fund was established on November 2, 1976.

The goals of the Permanent Fund as outlined in AS 37.13.020 are: (1) conservation of a portion of the state's mineral resource revenues to benefit all generations of Alaskans; (2) maintenance of the safety of the principal while maximizing total return; and (3) management of the Permanent Fund as a savings device to allow maximum use of disposable income for purposes defined by law. Funding is derived from three sources: dedicated revenue, legislative appropriations, and interest earnings.

The Alaska Constitution requires that at least 25% of all mineral lease rentals, royalties, royalty sale proceeds, federal mineral revenue sharing payments and bonuses be placed in the fund. Title IX, section 15. Subsequent legislation provided that this percentage be increased to 50% for certain types of oil and gas receipts.

The legislature has made two special appropriations to the Permanent Fund. The first was for $900 million in 1981 (ch. 35 SLA 1980) and the second was for $1.8 billion in 1982 (ch. 101 SLA 1982).

In 1980, the state legislature enacted the Permanent Fund dividend program (ch. 21 SLA 1980, hereinafter "the 1980 Act")[1] to distribute annually a portion of the Permanent Fund's earnings directly to the state's adult residents. Under the 1980 Act, each Alaska resident 18 years of age or older would receive one dividend per each year of residency since 1959, the year of statehood. The dividends would be paid yearly, starting with a value of $50 per dividend in 1979. The initial payment to long-term residents would be $1,050 each, while a new resident, having lived only one month of 1979 in Alaska, would receive $4 (1/12th of the $50 dividend for 1979).

---

1. Ch. 21 SLA 1980 is set forth in the appendix to this opinion.

The legislative intent of the dividend program was: (1) to provide a mechanism for equitable distribution to the people of Alaska of at least a portion of the state's energy wealth derived from the development and production of natural resources belonging to them as Alaskans; (2) to encourage persons to maintain their residence in Alaska and to reduce population turnover in the state; and (3) to encourage increased, long-term awareness and involvement by the residents of the state in management and expenditure of the Alaska Permanent Fund. Ch. 21 SLA 1980 § 1(b).

In 1980 two relatively new residents, Ronald M. Zobel and Patricia L. Zobel, challenged the Permanent Fund dividend program (the 1980 Act) on the grounds that the dividend plan discriminated between new and old residents of the state without adequate justification. They claimed that the dividend plan violated their rights to equal protection and to migrate freely and enjoy equal rights with other citizens of the state.

The Alaska Supreme Court, in *Williams v. Zobel*, 619 P.2d 448 (Alaska 1980), held the 1980 Permanent Fund income distribution statute did not violate the equal protection clauses of the Alaska and United States Constitutions. *Id.* at 464. That court carefully examined the statute's purposes (listed in the statute itself, ch. 21 SLA 1980 § 1(b)) and held "that the purposes underlying this statute are legitimate under state law." *Id.* at 459.

It is important to note that under article IX, section 6 of the Alaska Constitution, no appropriation of public money may be made "except for a public purpose". It is therefore clear that there was a "public purpose" behind the Permanent Fund dividend program.

The United States Supreme Court reversed *Williams v. Zobel, supra,* holding "that the Alaska dividend distribution plan violates the guarantees of the Equal Protection Clause of the Fourteenth Amendment." *Zobel v. Williams,* 457 U.S. 55, 65, 102 S.Ct. 2309, 2315, 72 L.Ed.2d 672 (1982). The Court pointed out that the Alaska Supreme Court had relied on a single justification to support the retrospective application of the dividend program favoring established residents over new residents. The justification—to reward citizens for past contributions—was found to be constitutionally unacceptable by the United States Supreme Court. As stated by the Court:

> In our view Alaska has shown no valid state interests which are rationally served by the distinction it makes between citizens who established residence before 1959 and those who have become residents since then.

*Id.*

Section 4 of the 1980 Act provided that invalidation of any portion of the dividend distribution plan rendered the whole plan invalid.

> Sec. 4. If any provision enacted in sec. 2 of this Act is held to be invalid by the final judgment, decision or order of a court of competent jurisdiction, then ... all provisions enacted in sec. 2 of this Act are invalid and of no force or effect.

Ch. 21 SLA 1980 § 4. Consequently, the decision in *Zobel v. Williams, supra,* would have rendered the whole dividend program invalid if the Alaska legislature had not enacted substitute legislation.

In anticipation of a possible reversal of the Alaska Supreme Court decision, the Alaska legislature considered and passed a bill amending the 1980 Act so that, in the event the United States Supreme Court found any of its terms unconstitutional, they would immediately be replaced with constitutionally sound provisions. This "backstop" legislation (ch. 102 SLA 1982) became operative shortly after the United States Supreme Court decision in *Zobel* and was codified as AS 43.23.005–.095. The legislature did not amend the purposes of the 1980 Act when it enacted the "backstop" legislation in 1982.

The 1982 Act provided payment of $1,000 as a 1982 dividend to each eligible resident, including children. The 1983 dividend payment to each resident Alaskan was $386.

In 1983 and thereafter, each Alaskan resident receives, by law, a pro rata share of the total amount available for distribution.

The amount available for distribution is one-half of the average net income of the Permanent Fund over a five-year period. An individual is eligible for a Permanent Fund dividend so long as he or she is a state resident of at least six months' duration (AS 43.23.005) and intends to remain permanently in the state (AS 43.23.095(7)).

After enactment of the Permanent Fund dividend program, the Department of Revenue sought advice from the Internal Revenue Service by letter dated November 19, 1980, concerning the tax treatment of the dividends. In Private Letter Ruling 8121122, dated February 27, 1981, the IRS informed the state that the dividends were not gifts but would be taxable as income. The IRS has also issued Revenue Ruling 85–39, 1985–13 I.R.B. 5, in which it determined that monies received by Alaskans from the Alaska natural resource wealth through the dividend program would be taxed as income under section 61 of the Internal Revenue Code.

After *Zobel* was decided and the "backstop" legislation went into effect, it became apparent that some minors who received only the $1,000 dividend were required to file an income tax return, even though they would owe no tax. United States Senator Murkowski proposed an amendment to pending federal legislation that would require a tax return only of someone who received more than $1,000 in income. Then, as now, a tax return was required of anyone receiving income in the amount of $1,000 or more. As ultimately passed on January 6, 1983, section 542(a) of Public Law No. 97–424 provides that:

> Nothing in section 6012(a) of the Internal Revenue Code of 1954 shall be construed to require the filing of a return with respect to income taxes ... by an individual whose only gross income for the taxable year is a grant of $1,000 received from a State which made such grants generally to residents of such State.

96 Stat. 2195 (1983). This legislation obviated the need for some minors to file returns.

The state began mailing dividend checks after the *Zobel* decision. Attached to each check was a statement that the dividend amount must be reported as taxable federal income.

## II.

### THE LAWSUITS

The three cases presently before the Court, which have been consolidated for purposes of resolving dispositive motions, each raise the question of the correct tax treatment of dividends received from the Alaska Permanent Fund. The central issue is whether the Alaska Permanent Fund dividends are included in gross income.

Case No. A85–209 Civil was brought by Plaintiff Mary Elizabeth Beattie, an Alaska resident and a minor. J. Patrick Beattie is Plaintiff's father. The suit is for the refund of taxes alleged to have been erroneously and illegally assessed against and collected from Plaintiff.

In Plaintiff's income tax return for the calendar year 1983, Plaintiff reported as gross income two payments from the Alaska Permanent Fund: a $1,000 payment relating to 1982 and a $386.15 payment relating to 1983. Plaintiff paid the appropriate federal income tax on these payments. Thereafter, Plaintiff filed a refund claim for the year 1983 with respect to the payments described above. On March 14, 1985, the district director mailed to Plaintiff a formal notice of disallowance of Plaintiff's claim for refund.

Plaintiff argues she has no liability for the aforementioned income tax and is entitled to recover from Defendant the sum of $44 plus interest, costs, and attorney's fees. Plaintiff further states that she is the sole owner of her claim against the Defendant and has made no assignment of that claim.

Case No. A85–359 Civil was brought by Plaintiff David J. Greisen, a minor, by and through his father and natural guardian,

Ronald E. Greisen, for the recovery of IRS taxes and interest alleged to have been erroneously and illegally collected from Plaintiff.

Plaintiff Greisen was born in Anchorage, Alaska, on August 30, 1982. In order to verify his son's eligibility for the Alaska Permanent Fund dividend program, Plaintiff's father submitted a form to the State of Alaska on which Plaintiff's eligibility for the dividend was verified.

Plaintiff Greisen received $1,000 from the Alaska Permanent Fund dividend program in 1982. For the calendar year ending December 31, 1982, Plaintiff timely filed a federal income tax return in which the $1,000 Alaska Permanent Fund dividend was included as gross income. Plaintiff timely paid the tax shown to be due on his 1982 federal income tax return in the amount of $2. Plaintiff filed a timely claim for refund of such tax paid for the year ending December 31, 1982, which claim was filed in May of 1985.

Plaintiff Greisen alleges in his complaint that the aforementioned $1,000 Alaska Permanent Fund dividend received by him was not gross income under section 61 of the Internal Revenue Code, 26 U.S.C. § 61, because the $1,000 constitutes a gift and thus is excludable under section 102 of the Code, 26 U.S.C. § 102, and furthermore that the $1,000 is not of the nature of income as defined by section 61.

Plaintiff Greisen prays for judgment in the amount of $2 plus interest, costs, and attorney's fees, and asks that the United States and the IRS be enjoined from including Alaska Permanent Fund dividends in the gross income of persons who receive such dividends. Plaintiff further states that he is the sole owner of his claim against Defendant and has made no assignment of that claim.

Case No. A85–387 Civil was brought by Plaintiff Catherine Anne Beattie, an Alaska resident and a minor. J. Patrick Beattie is Plaintiff's father. The suit is for the refund of taxes alleged to have been erroneously and illegally assessed against and collected from Plaintiff.

This action is brought by Plaintiff Beattie as a class action, on her own behalf and on behalf of all others similarly situated, under the provisions of Rule 23, Federal Rules of Civil Procedure, for a determination of whether payments from the Alaska Permanent Fund are gross income under the federal income tax. To date, Plaintiff has not sought certification of the class as required by Rule 23. Consequently, she currently represents only herself.

In Plaintiff Beattie's income tax return for the calendar year 1983, she reported as gross income two payments from the Alaska Permanent Fund: a $1,000 payment relating to 1982 and a $386.15 payment relating to 1983. Plaintiff paid the appropriate federal income tax on these payments.

On approximately May 8, 1985, Plaintiff Beattie filed a claim for refund for the year 1983 with the appropriate IRS office. In this claim she requested refund of the income taxes paid with respect to the payments described above. On approximately June 14, 1985, the district director mailed to Plaintiff by registered mail a formal notice of disallowance of Plaintiff's claim for refund.

Plaintiff Beattie argues that she has no liability for the income tax and is entitled to recover from Defendant the sum of $57.40, plus interest, costs, and attorney's fees. Plaintiff further states that she is the sole owner of her claim against Defendant and that she has made no assignment of the claim.

Jurisdiction is conferred upon this Court in all three cases by virtue of 28 U.S.C. § 1346(a)(1).

Defendant United States of America (hereinafter "the Government") denies in all three cases that taxes were assessed or collected erroneously or illegally from the Plaintiffs. Although the Government has denied "for lack of knowledge or information" that Plaintiff Mary Elizabeth Beattie is the sole owner of her claim against the United States and has made no assignment of that claim, it is evident from the memoranda now before the Court that there real-

ly is no controversy involving her ownership and non-assignment of her claim. All other basic facts are admitted with the exception that the Government maintains that the Plaintiffs are liable for the taxes that were paid.

Plaintiffs Mary Elizabeth Beattie and David J. Greisen have moved for summary judgment. The Government opposes these motions and has cross-moved for summary judgment in its favor. Plaintiff Catherine Anne Beattie has not moved for summary judgment. The Government seeks summary judgment against her.

Plaintiff Mary Elizabeth Beattie's motion for summary judgment requests the court to hold that, under federal income tax law and the facts of this case, the Permanent Fund dividend is a gift excluded from federal taxation. She argues that the Permanent Fund dividend payments distributed by the State of Alaska to residents of the state are excludable from gross income as gifts under the Internal Revenue Code, section 102. The rationale behind her argument is as follows.

According to Plaintiff, the state's dominant reason for making the Permanent Fund dividend payments was to distribute excess oil wealth. The payments were made out of detached and disinterested generosity. Neither the state's dominant reason, nor its two subsidiary reasons (population stability and interest in management), provided the State of Alaska with substantial benefits according to Plaintiff. Rather, any benefits which accrued to the state were incidental and closely analogous to the benefits that inure to the general public from transfers for charitable purposes.

In his motion for summary judgment, Plaintiff David J. Greisen moves that the Court hold that the payments made by the State of Alaska under the Permanent Fund dividend program are not "income" within the meaning of the sixteenth amendment to the Constitution of the United States, and thus Revenue Ruling 85–39, 1985–13 I.R.B. 5, is unconstitutional and void. In short, his motion presents the question whether, by virtue of the sixteenth amendment, Congress has the power to tax as income to the recipient the payments made by the State of Alaska under the Permanent Fund dividend program.

Plaintiff Greisen, in his opposition to the Government's cross-motion for summary judgment, more or less adopts the Beattie "gift" argument and requests the court to find that the payments made by the state under the Permanent Fund dividend program are gifts and thus excludable from gross income under section 102 of the Internal Revenue Code.

The Government has moved for summary judgment in its own behalf in all three cases, taking the position that the Permanent Fund payments are income and they are not a "gift". The Government's argument is founded upon section 61 of the Internal Revenue Code which states that, except as otherwise provided, gross income means "all income from whatever source derived", 26 U.S.C. § 61(a). In defining gross income as broadly as it did, Congress intended, it is argued, to tax all gains except those specifically exempted. The Government's position is that the only possible exemption of any application in the present cases is the gift exemption; however, the Government views the gift exemption as having no application to state paid dividends made pursuant to the express legislative purposes outlined in ch. 21 SLA 1980 § 1(b).

### III.

### DISCUSSION

*This Case May Properly Be Decided By Summary Judgment*

Plaintiff Mary Elizabeth Beattie argues that the determination of whether a transfer constitutes a gift under section 102 of the Internal Revenue Code is a question of fact to be determined by a jury. She further argues that a decision concerning intention is a question of fact which generally should not be decided by summary judgment. *Sankovich v. Life Insurance Co. of*

*North America,* 638 F.2d 136, 140 (9th Cir.1981); *Hotel & Restaurant Employees & Bartenders International Union v. Rollison,* 615 F.2d 788, 793 (9th Cir.1980).

In support of her position, she quotes the Supreme Court's statement in *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960):

> Decision ... must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. ... [T]he multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact.

*Id.* at 289, 80 S.Ct. at 1198. She also refers the court to Wright, Miller, and Kane's view that:

> Inasmuch as a determination of *someone's* state of mind usually entails the drawing of factual inferences as to which reasonable men might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character.

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2730 at 238 (2d ed. 1983), emphasis added.

Plaintiff Beattie's conclusion—that this case cannot be decided on motion for summary judgment but instead must be decided by a jury after consideration of all the factual evidence—is incorrect.

While *Duberstein* does stand for the proposition that intent is determinative in the gift context and that intent is a question of fact, the Supreme Court in *Duberstein* was dealing with gifts in a business setting where interpersonal relations motivated transfers of property. Given the interpersonal context of the transfer in *Duberstein,* it was important for the Supreme Court to emphasize that a decision be based on the "fact-finding tribunal's experience with the mainsprings of human conduct." In short, the focus of inquiry was on the state of mind or intent of an individual concerning a transfer of property in an interpersonal context.

Similarly, Plaintiff's aforementioned quotation from Wright, Miller, and Kane was also directed to an evaluation of an individual's state of mind.

In the present case, however, the transferor is a state rather than an individual, and therefore notions of intent applicable in an interpersonal context have no bearing. *Cf., Joshel v. Commissioner,* 296 F.2d 645, 647–48 (10th Cir.1961) (a personal-emotions test is inapplicable in the case of corporations). We are not dealing with a normal gift situation where a natural person makes a gift to someone else under circumstances which may or may not reflect the motives or intent of the donor. Rather, the State of Alaska has made Permanent Fund dividend payments pursuant to the express legislative purposes outlined in ch. 21 SLA 1980, section 1(b). The nature and purpose of these Permanent Fund dividend payments must be gleaned from an interpretation of the authorizing statute. Such statutory interpretation does not involve fact finding. It involves legal analysis beginning with the plain language of the statute and, where appropriate, consideration of the underlying legislative history.

Plaintiff David J. Greisen argues that a determination of the legislature's dominant motivation for making the Permanent Fund dividend payments is a question of fact to be decided by a jury. Plaintiff Greisen's citation to *Olk v. United States,* 536 F.2d 876, 878 (9th Cir.1976), *cert. denied,* 429 U.S. 920, 97 S.Ct. 317, 50 L.Ed.2d 287 (1976), is inapposite for the same reason that Plaintiff Beattie's reliance on *Duberstein* was misplaced. *Olk,* like *Duberstein,* involved a determination of the intent of an individual concerning the transfer of property in an interpersonal context. It did not involve a determination of legislative intent as does the instant case.

 Legislative intent is a question of law for the court, not a question of fact for a jury. The court's task in all cases of

statutory construction is to interpret the words of the statute in light of the purposes the legislature sought to serve. *Norfolk Redevelopment & Housing Authority v. Chesapeake & Potomac Telephone Co. of Virginia*, 464 U.S. 30, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983); *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).

■ The court, therefore, concludes that there are no factual issues to be decided concerning whether the legislature intended the Permanent Fund dividend payments to be gifts. Furthermore, the court points out that the parties taking the position that there are factual issues have not filed any statement of genuine issues as required by the local rules.

For the aforementioned reasons, the court is free to decide this case on motion for summary judgment and will now proceed to an analysis of the legislative intent behind the Permanent Fund dividend payments.

### Alaska Permanent Fund Dividends Are Not "Gifts"

The leading case concerning whether a transfer of property is a gift is *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In *Duberstein*, the Court reviewed the established cases and made the following series of observations concerning the meaning of the term "gift" in section 102(a) of the Internal Revenue Code:

> [T]he statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 730 [49 S.Ct. 499,

504, 73 L.Ed. 918]. And, importantly if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, *Bogardus v. Commissioner*, 302 U.S. 34, 41 [58 S.Ct. 61, 65, 82 L.Ed. 32], it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." *Robertson v. United States*, 343 U.S. 711, 714 [72 S.Ct. 994, 996, 96 L.Ed. 1237]. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," *Commissioner v. LoBue*, 351 U.S. 243, 246 [76 S.Ct. 800, 803, 100 L.Ed. 1142]; "out of affection, respect, admiration, charity or like impulses." *Robertson v. United States, supra*, [343 U.S.] at 714 [72 S.Ct. at 996]. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention". *Bogardus v. Commissioner*, 302 U.S. 34, 43 [58 S.Ct. 61, 65, 82 L.Ed. 32]. "What controls is the intention with which payment, however voluntary, has been made." *Id.* at 45 [58 S.Ct. at 66] (dissenting opinion).
>
> ... Moreover, the *Bogardus* case itself makes it plain that the donor's characterization of his action is not determinative—that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S. at 40 [58 S.Ct. at 64]. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter.
>
> ... We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer.

363 U.S. 278 at 285–86, 80 S.Ct. 1190 at 1196–97.

Plaintiffs here argue that the Permanent Fund dividend payments were gifts. The

Government contends otherwise. Everyone, by and large, relies upon traditional concepts of what is or is not a gift for purposes of the tax laws, even though these concepts do not "fit" particularly well when the alleged donor is a governmental entity.

It should be noted at the outset that the State of Alaska can, in a sense, give away money or land to citizens of the state without consideration so long as the giving is supported by a public purpose. Alaska Const. art. IX, § 6.

In its preamble to the statement of purpose for the Permanent Fund dividend program, the legislature of the State of Alaska expressly characterizes its undertaking as being one arising out of "the duty and policy of the state with respect to the natural resources belonging to it", ch. 21 SLA 1980 § 1(a). While we may well debate whether or not the state was in fact under such a duty, it is abundantly clear that the legislature considered itself under some form of obligation to make the payments in question. Whether the obligation felt by the legislature did or did not exist in law or fact, or whether it was a moral obligation or some other kind of obligation, makes no difference. What is important is that the legislature clearly conveyed the notion that it felt constrained—that is, required—to make the payments. Such is not the stuff of which "gifts" are made. Rather than bespeaking a "detached and disinterested generosity", we are left with the clear understanding that the legislature saw itself transferring what was due and owing (although not in a legal sense) to the residents of the State of Alaska. Conversely, there is nothing in the acts authorizing the dividend payments (ch. 21 SLA 1980 and ch. 102 SLA 1982) or in the legislative history of those acts which expresses the intent or purpose of effecting a "gift".

For purposes of section 102 of the Internal Revenue Code and *Duberstein,* gifts must proceed "out of affection, respect, admiration, charity, or like impulses". The Permanent Fund dividend payments did not proceed from such considerations. Instead, they proceeded from a legislatively perceived concept of duty in furtherance of a public purpose—without which purpose the gift of money could not be constitutionally possible. Alaska Const. art. IX, § 6. Had the Alaska Supreme Court not found a supporting public purpose in *Williams v. Zobel, supra,* 619 P.2d 448, the disbursement would have been unconstitutional by state standards.

The stated public purposes of the acts authorizing the dividend payments were to: (a) effect an equitable distribution of a portion of the state's wealth, (b) encourage residential longevity in Alaska, and (c) encourage involvement by residents in the management and expenditure of the Permanent Fund. It is clear from the foregoing stated public purposes that there is no suggestion whatsoever of the payments being made on account of affection, respect, admiration, charity, or like impulses.

■ To the extent that the *Duberstein* concepts of "gift" for purposes of the tax laws are here applicable, the court concludes that the Permanent Fund dividend payments are not "gifts". Furthermore, as previously mentioned, these traditional concepts of "gift" for purposes of the tax laws do not "fit" particularly well when the alleged donor is a governmental entity. For this reason, the court concludes that a public transfer of money by act of a state legislature in furtherance of a public purpose is *sui generis*—that is, in a class by itself. Such a transfer by a state legislature of public money for a public purpose is simply not a gift.

On the other hand, Congress which imposes the federal income tax can indicate explicitly or through legislative intent that a payment it makes shall be treated as a gift and excluded from gross income. *See Dewling v. United States,* 101 F.Supp. 892, 893, 121 Ct.Cl. 635 (1952), where payments to citizens for past services constructing the Panama Canal were determined to be gifts based upon the congressional intent that the payments be viewed as a "thank-offering" for services rendered. *Also see, United States v. Hurst,* 2 F.2d 73 (10th

Cir.1924), where the court employed a similar "compensation for past services" rationale for establishing the basis of a gift. As stated by the court, "[i]f there can be a reward offered ... for past services to the government, upon the same theory why cannot a reward be offered to a discoverer of mineral deposits?" *Id.* at 80. *Dewling* and *Hurst,* however, are inapposite to the present case which involves payments made pursuant to the act of a state legislature. Although Congress may indicate that a payment be treated as a gift and excluded from gross income, a state legislature does not have the power to control the meaning of federal tax legislation, nor did the Alaska legislature purport to do so in this case.

The Court concludes that the Permanent Fund dividend payments were made for a public purpose and were not gifts for purposes of section 102 of the Internal Revenue Code. The court can find in the acts authorizing such payments no express or other clear legislative intent to effect a gift.

### Permanent Fund Dividend Payments Are Income

■ The sixteenth amendment provides that "incomes, from whatever source derived," may be taxed. In furtherance of the sixteenth amendment, Congress in 1954 adopted section 61(a) of the Internal Revenue Code, which provides that gross income includes "all income from whatever source derived."

The legislative history of section 61 clearly indicates a congressional intent to tax income to the fullest extent permitted under the sixteenth amendment. The house report speaks of the "all-inclusive nature of statutory gross income" and states that the definition of gross income found in section 61(a) "is based upon the 16th Amendment [with] the word 'income' ... used in its constitutional sense." H.R. Rep. No. 1337, 83d Cong., 2d Sess. A18, U.S.Code Cong. & Admin.News 1954, pp. 4017, 4155; *see also,* S.Rep. No. 1622, 83d Cong., 2d Sess. 168, U.S.Code Cong. & Ad-

min.News 1954, p. 4802; *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 432, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955); *Commissioner v. LoBue,* 351 U.S. 243, 246, 76 S.Ct. 800, 802, 100 L.Ed. 1142 (1956).

Plaintiff Greisen argues that the only reliable definitions of "income" for the purposes of this case are those formed in the context of construing the Constitution. Definitions of income made in the context of construing the Internal Revenue Code are viewed by Plaintiff as applicable in the instant case only to the extent they are consistent with those formed in the context of construing the Constitution.

Plaintiff argues that the United States Supreme Court's definition of income in *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955) cannot be applied in this case because it was made in the context of construing the Internal Revenue Code, not the sixteenth amendment.

In *Glenshaw Glass* the Supreme Court was confronted with the question of whether punitive or treble damage awards are taxable. In holding that punitive damages and the multiplier effect (two-thirds) of treble damages were income and taxable, the Supreme Court characterized those damage payments as:

[U]ndeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.

*Id.* at 431, 75 S.Ct. at 477.

The Government relies upon *Glenshaw Glass*'s "undeniable accessions to wealth" definition of income for support of its proposition that the Permanent Fund dividend payments are income and are taxable. There is no question but that the Permanent Fund dividend payments received by Plaintiffs fit the *Glenshaw Glass* definition of income. The difficulty with applying *Glenshaw Glass* to the argument made in the instant case is that in *Glenshaw Glass* the taxpayers had conceded that there was no constitutional barrier to imposition of a tax upon punitive damages. Accordingly, the United States Supreme Court never addressed the question of whether such

payments were within the purview of the sixteenth amendment. The Supreme Court quite properly held:

> We would do violence to the plain meaning of the *statute* and restrict a clear legislative attempt to bring the taxing power to bear upon all receipts constitutionally taxable were we to say that the payments in question here are not gross income.

*Id.* at 432–33, 75 S.Ct. at 477–78, emphasis supplied.

Thus *Glenshaw Glass* is a statutory construction case that does not answer the question: Is the payment made to the taxpayer "income" for purposes of the sixteenth amendment to the United States Constitution? While the above-quoted language may be susceptible to some misunderstanding since it makes reference to that which is "constitutionally taxable", a careful reading of *Glenshaw Glass* leaves no doubt but that the United States Supreme Court was not asked to and did not address the constitutional question of what is income.

Plaintiff Greisen points to a number of U.S. Supreme Court decisions to support his conclusion that "income" as used in the sixteenth amendment means the fruits of labor and capital, and that it is the "commonly understood meaning of the term" income that is appropriate in the context of construing the Constitution. *Merchants' Loan & Trust Co. v. Smietanka,* 255 U.S. 509, 519, 41 S.Ct. 386, 388, 65 L.Ed. 751 (1921); *Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920); *United States v. Safety Car Heating & Lighting Co.,* 297 U.S. 88, 89, 56 S.Ct. 353, 354, 80 L.Ed. 500 (1936). *See also, Roberts v. Commissioner,* 176 F.2d 221, 225 (9th Cir.1949).

Employing this definition, Plaintiff Greisen argues that the Permanent Fund dividend payments are neither the fruits of labor or capital, nor are they "income" in the layman's sense of the word. Plaintiff contends that the commonly understood meaning of the term income at the time of the adoption of the sixteenth amendment

was such that "any payment must be from a source external to the recipient". As Plaintiff points out, this is consistent with the term's entymology as "a coming in" of wealth from a source exterior to the taxpayer. He argues that the Permanent Fund dividend payments are not from an outside or third-party source since it is the people's natural resources and the people's income from those resources which the legislature is disbursing to the people of the State of Alaska.

If we accept, and for purposes of this discussion the court does accept, Greisen's definition of "income", there is no question but that the payment from the State of Alaska is an addition or a "coming in" to the taxpayer's wealth. However, it is clear that the payment in question comes from an exterior source.

Neither the resources in question, nor the proceeds from the same, nor the income from those proceeds, are the "property" of any person who resides in the State of Alaska. As Greisen argues, the people in some very real sense do have ultimate sovereignty and are the ultimate masters of the state. But that does not make the people the "owners" of that property which is the subject of this discussion. In adopting their constitution, the people of the State of Alaska have very clearly constituted the *state* as owner of the natural resources which give rise to the fund in question. Alaska Const. art. VIII, §§ 1 and 2.

Article VIII of the Constitution of the State of Alaska deals generally with natural resources which are, of course, the source from which the Permanent Fund has grown. Article VIII, section 1, provides that "[i]t is the policy of the State to encourage the settlement of *its* land and the development of *its* resources by making them available for maximum use consistent with the public interest." Alaska Const. art. VIII, § 1, emphasis added. Section 2 mandates that:

> The legislature shall provide for the utilization, development, and conservation of all natural resources *belonging to the*

*State*, including land and waters, for the maximum benefit of its people.

Alaska Const. art. VIII, § 2, emphasis added.

It is clear from the plain language of Article VIII that the people of Alaska have constituted the State of Alaska as owner of the natural resources which are the source of the Permanent Fund dividend payments.

Surely the Plaintiffs here would not argue that corporate dividends are not taxable because the shareholders of a corporation own the underlying assets and are therefore simply taking what is already theirs when they receive dividend checks. While the analogy may not be perfect, the Court does not see the State of Alaska Permanent Fund dividends as being substantially different from a corporate dividend insofar as Greisen's argument is concerned. Private individuals form corporations, charter them to own certain assets, and hopefully see the corporation prosper. The shareholders of the corporation have the ultimate power to require the corporation to pay dividends. Yet we do not for a moment think that the individual shareholders "own" the corporate assets or that the dividends, when declared, are not taxable. Just as one can create a corporation and by law have it constituted a separate legal person, so too the people of the State of Alaska have created a distinct legal person, capable of owning property and receiving the income from that property when they chartered the State of Alaska through the constitution. The people still hold the ultimate power; but they do not "own" the natural resources nor the proceeds from the same nor the Alaska Permanent Fund so as to be able to claim dividend payments as their own property before distribution.

Although Greisen does not really address the broader question of "what are the outside parameters of 'incomes'" as used in the sixteenth amendment, the court is satisfied that payments by the State of Alaska of income from its Permanent Fund are "income" to the recipients. The sixteenth amendment expressly provides that income "from whatever source derived" is taxable, and the plain meaning of those words is broad enough to encompass a monetary payment from a state to its residents. Thus this court concludes that the Alaska Permanent Fund dividend payments are income for purposes of the sixteenth amendment to the United States Constitution. It necessarily follows that these payments are gross income under section 61 of the Internal Revenue Code.

## IV.

## CONCLUSION

Since the Alaska Permanent Fund dividend payments are income and since these payments are not excludable from gross income as "gifts", they are therefore subject to the federal income tax.

The motions of Mary Elizabeth Beattie and David J. Greisen for summary judgment are denied. The Government's cross-motion for summary judgment against Mary Elizabeth Beattie and David J. Greisen and its motion for summary judgment against Catherine Anne Beattie are granted. The Clerk of Court shall enter judgment dismissing all three complaints with prejudice.

### LAWS OF ALASKA
#### 1980

| Source | Chapter No. |
|--------|-------------|
| FCCSSB 122 | 21 |

#### AN ACT

Providing for the payment of Alaska permanent fund income to state residents; and providing for an effective date.

———

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF ALASKA:**

Approved by the Governor: April 15, 1980
Actual Effective Date: April 16, 1980 with Sections 1 and 2 retroactive to January 1, 1979.

## AN ACT

Providing for the payment of Alaska permanent fund income to state residents; and providing for an effective date.

---

* Section 1. POLICY, PURPOSES AND FINDINGS. (a) It is the duty and policy of the state with respect to the natural resources belonging to it and the income derived from those natural resources to provide for their use, development, and conservation for the maximum benefit of the people of the state.

(b) The purposes of this Act are

(1) to provide a mechanism for equitable distribution to the people of Alaska of at least a portion of the state's energy wealth derived from the development and production of the natural resources belonging to them as Alaskans;

(2) to encourage persons to maintain their residence in Alaska and to reduce population turnover in the state; and

(3) to encourage increased awareness and involvement by the residents of the state in the management and expenditure of the Alaska permanent fund (art. IX, sec. 15, state constitution).

(c) The legislature finds that the accrual of permanent fund dividends provided in AS 43.23 enacted in sec. 2 of this Act, based on full years of residency since January 1, 1959, fairly compensates each state resident for his equitable ownership of the state's natural resources since the date of statehood. It is in the public interest to distribute a portion of Alaska's energy wealth to the people of the state.

(d) The legislature also finds that state residents have been paying increasingly high prices for fossil fuels, while few have received direct monetary benefits from the production and development of fossil fuels belonging to them as Alaskans. It is in the public interest to return to state residents a portion of the state's income from oil, gas, and other mineral production to help offset rising fuel costs.

(e) The legislature also finds that there exists in the state a serious problem of population turnover. A substantial portion of the state's population is comprised of individuals who reside in Alaska for only a relatively short time. This constant turnover in population leads to political, economic, and social instability and is harmful to the state. It is in the public interest for the state to promote a stable resident population by providing an incentive to encourage Alaskans to maintain their residency in the state.

* Sec. 2. AS 43 is amended by adding a new chapter to read:

## CHAPTER 23. PERMANENT FUND DIVIDENDS.

Sec. 43.23.010. ELIGIBILITY FOR PERMANENT FUND DIVIDEND. (a) An individual who is eligible under (b) of this section is entitled to one permanent fund dividend for each full year that the individual is a state resident after January 1, 1959.

(b) For each year, an individual is eligible to receive payment of the permanent fund dividends for which he is entitled under this section if he

(1) is at least 18 years of age; and

(2) is a state resident during all or part of the year for which the permanent fund dividend is paid.

(c) To determine the number of permanent fund dividends to which an individual is entitled under (a) of this section, a year in which the individual is a state resident for less than 12 months may not be counted, but a payment of a permanent fund dividend may be made for that year under (f) of this section. A year for which an individual was entitled to payment of a dividend but failed to file a claim may be counted to determine the number of dividends under (a) of this section.

(d) An individual may receive payment of a permanent fund dividend in a single payment or in 12 equal installments paid monthly by the department.

(e) An individual eligible to receive payment of a permanent fund dividend may elect to defer receipt of that payment. The commissioner shall adopt by regulation a plan which, to the extent permitted under federal law, will allow an individual to defer payment of federal and state income taxes on the payment of permanent fund dividends until the individual actually receives the payment.

(f) If an individual who is eligible under (b) of this section was a state resident for less than 12 months during the year immediately preceding the year in which a claim is filed, the individual is entitled to payment of one prorated dividend. If that individual is also entitled to dividends under (a) of this section based on previous years as a state resident, he is entitled to receive a prorated payment for the total number of permanent fund dividends to which he is entitled under (a) of this section. A prorated dividend or prorated payment under this subsection shall be prorated on the basis of the number of months that the individual was a state resident during the year immediately preceding the year in which the dividend is claimed.

Sec. 43.23.020. PROOF OF ELIGIBILITY. (a) The commissioner shall adopt regulations under the Administrative Procedure Act (AS 44.62) for determining the eligibility of individuals. The commissioner may require an individual to provide proof of eligibility, or he may use other information available to him from other state departments or agencies to determine the eligibility of individuals. The commissioner may establish procedures for paying the permanent fund dividends along with other payments of money or state benefits.

(b) The department may prescribe and furnish an application form for claiming a permanent fund dividend which contains

(1) a statement of eligibility and a certification of residency in substantially the following form:

I certify that I am a state resident on the date of this application and I have been a state resident for __ full years and that I understand that my claim for a permanent fund dividend is determined by the length of my residence in the state after January 1, 1959. I also understand that a false claim of residency to obtain a permanent fund dividend is a criminal offense and that if convicted I will forfeit all permanent fund dividends and that I must repay all permanent fund dividends which have been paid to me. I understand that this penalty is in addition to any criminal penalties imposed.

_____
(signature of individual)

and

(2) a statement advising the individual that he may choose to receive the payment of a permanent fund dividend in a single payment or in 12 installments payable monthly and a space where the individual may indicate his choice of payment.

Sec. 43.23.030. AMOUNT OF DIVIDEND. By December 1 of each year the commissioner shall give public notice of the value of each permanent fund dividend to be paid in the following year. The commissioner shall determine the value of a permanent fund dividend by

(1) determining the amount of income of the Alaska permanent fund transferred to the dividend fund under AS 43.23.050(b) in the current year, less the amount, if any, to be repaid in the current year to the general fund under AS 43.23.050(c);

(2) determining the number of permanent fund dividends paid during the current year; and

(3) dividing the amount determined in (1) of this section by the amount determined in (2) of this section.

Sec. 43.23.040. PENALTIES AND ENFORCEMENT. (a) In addition to any criminal penalties imposed by state law, if an individual is convicted of unsworn falsification for a statement made in a certification of residency made for purposes of this chapter, and the conviction is not reversed, that individual is not, and may never be-

come, eligible for a permanent fund dividend, and he forfeits all permanent fund dividends paid to him.

(b) If the commissioner determines that a permanent fund dividend should not have been claimed by or paid to an individual, he may use any collection procedures or remedies available under this title to recover the payment of a permanent fund dividend which was improperly made.

Sec. 43.23.050. DIVIDEND FUND ESTABLISHED. (a) The dividend fund is established as a separate fund in the state treasury. The dividend fund shall be administered by the commissioner and may be invested by the commissioner in the same manner provided for the investment of the Alaska permanent fund under AS 37.13.120. Money in the dividend fund and any interest earned from investment of money in the dividend fund shall be used to pay permanent fund dividends annually and to repay loans from the general fund as provided in (c) of this section.

(b) Each year the commissioner shall transfer to the dividend fund 50 percent of the income of the Alaska permanent fund which was earned during the fiscal year ending on June 30 of the preceding year and which is available for distribution under AS 37.13.140.

(c) The legislature may annually appropriate money from the general fund to the dividend fund if there is not enough money in the dividend fund to pay each eligible individual an annual permanent fund dividend valued at $50. One-fifth of the amount transferred to the dividend fund each year under (b) of this section shall be annually withdrawn from the dividend fund by the commissioner and deposited in the general fund to repay appropriations made under this subsection.

Sec. 43.23.060. DUTIES OF THE DEPARTMENT. The department shall

(1) by the 10th day of each regular legislative session, present a request to the legislature for an appropriation from the general fund to the dividend fund to satisfy the requirements of AS 43.23.050;

(2) annually pay permanent fund dividends from the dividend fund;

(3) adopt regulations under the Administrative Procedure Act (AS 44.62) which establish procedures and time limits for claiming a permanent fund dividend; the department shall set the time limit for applications for permanent fund dividends so that single-payment permanent fund dividends for a year are paid before October 15 of the following year and so that installment-payment permanent fund dividends for a year begin by October 15 of the following year; and

(4) assist residents of rural areas who because of language, illness, old age, or inaccessibility to public transportation need assistance to establish eligibility and to apply for permanent fund dividends.

Sec. 43.23.070. EXEMPTION OF PERMANENT FUND DIVIDENDS. (a) An eligible individual may assign, pledge, or encumber not more than 50 percent of the annual permanent fund dividends which are due and payable or which may become due and payable to the individual.

(b) Fifty percent of the annual permanent fund dividends payable to an individual is exempt from levy, execution, garnishment, attachment, and any other remedy for the collection of a debt.

(c) Fifty percent of the annual permanent fund dividends paid to an individual which are not held separately from other money of the individual is exempt from levy, execution, garnishment, attachment and any other remedy for the collection of a debt.

Sec. 43.23.080. ELIGIBILITY FOR STATE PUBLIC ASSISTANCE PAYMENTS. In determining the eligibility of an individual for old age assistance under AS 47.25.430—47.25.610, aid to the blind under AS 47.25.620—47.25.780, or aid to the permanently and totally disabled under AS 47.25.790—47.25.970, the Department of Health and Social Services may include as income of the individual only the amount of the permanent fund dividends in excess of $1,500 paid to the individual for a year.

Sec. 43.23.090. TAX EXEMPTION. Permanent fund dividends provided under this chapter are exempt from taxation under AS 43.20.

Sec. 43.23.100. DEFINITIONS. In this chapter,

(1) "Alaska permanent fund" means the fund established by art. IX, sec. 15, of the state constitution;

(2) "commissioner" means the commissioner of revenue;

(3) "department" means the Department of Revenue;

(4) "dividend fund" means the fund established by AS 43.23.050;

(5) "individual" means a natural person;

(6) "permanent fund dividend" means a right to receive a payment of money from the dividend fund;

(7) "state resident" means an individual who is physically present in the state with the intent to remain permanently in the state or, if he is not physically present in the state, intends to return to the state and he is absent for the following reasons:

(A) vocational, professional or other special education for which a comparable program was not reasonably available in the state,

(B) postsecondary education,

(C) military service,

(D) medical treatment,

(E) service in Congress, or

(F) other reasons which the commissioner may establish by regulation under the Administrative Procedure Act (AS 44.62);

(8) "year" means a calendar year.

* Sec. 3. For 1979 the value of a permanent fund dividend is $50. The payment of permanent fund dividends for 1979 shall be made from an appropriation from the general fund to the dividend fund for that purpose. The amount appropriated from the general fund to pay permanent fund dividends for 1979 less 50 percent of the income of the Alaska permanent fund earned during the fiscal year ending June 30, 1978, is a loan to the dividend fund from the general fund which shall be repaid as provided in AS 43.23.050(c) enacted by sec. 2 of this Act. The Department of Revenue shall by July 1, 1980, prescribe and make available an application form for claiming permanent fund dividends for 1979. The Department of Revenue shall mail the form to each individual who, before July 1, 1980, filed a resident or part-year resident Alaska net income tax return for the 1979 tax year under AS 43.20. An eligible individual may receive payment of permanent fund dividends for 1979 if he applies to the Department of Revenue on the form prescribed by the department no later than September 1, 1980. The application must be accompanied by a statement of eligibility as required by AS 43.23.020 enacted in sec. 2 of this Act.

* Sec. 4. If any provision enacted in sec. 2 of this Act is held to be invalid by the final judgment, decision or order of a court of competent jurisdiction, then that provision is nonseverable, and all provisions enacted in sec. 2 of this Act are invalid and of no force or effect.

* Sec. 5. Sections 1 and 2 of this Act are retroactive to January 1, 1979.

* Sec. 6. This Act takes effect immediately in accordance with AS 01.10.070(c).