David J. GREISEN, By and Through his father and natural guardian, Ronald E. GREISEN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Mary Elizabeth BEATTIE and Catherine Anne Beattie, minors, Through their next friend, J. Patrick BEATTIE, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 86–3728, 86–3828.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1987.

Decided Nov. 5, 1987.

William M. Bankston and Steven T. O'Hara, Bankston, McCollum & Fossey, Anchorage, Alaska, for plaintiff-appellant in No. 86–3728.

David G. Shaftel, Anchorage, Alaska, for plaintiffs-appellants in No. 86–3828.

Ernest J. Brown, Washington, D.C., for defendant-appellant.

Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

These three separate claims, consolidated in the district court, challenge the assessment of federal income tax on payments from Alaska's Permanent Fund Dividend Program. Plaintiffs seek refund of taxes paid, claiming that Alaska's distribution of its energy wealth to the state's residents through the program is a "gift," exempt from federal taxation. On cross-motions for summary judgment, the district court granted the government's motion, finding that the payments were not gifts, and that they were "income" within the meaning of the sixteenth amendment and the Internal Revenue Code.

In 1976, the people of the State of Alaska amended their constitution to establish the Alaska Permanent Fund, financed by at least 25 percent of the state's annual oil

and mineral proceeds. Alaska Const., Art. IX, § 15. The goals of the fund are: (1) to conserve a portion of the revenues earned from mineral resources for all generations of Alaskans; (2) to maintain the safety of the fund's principal while maximizing total return; and (3) to maintain a savings device allowing maximum use of disposable income from the fund for purposes designated by law. Alaska Stat. § 37.13.020 (1983).

In 1980, the state legislature enacted the Permanent Fund Dividend Program to distribute annually a portion of the fund's earnings to each of the state's adult residents. The 1980 Act was intended: (1) to provide equitable distribution of a portion of the state's energy wealth to Alaskans; (2) to encourage people to remain Alaska residents, thereby reducing population turnover in the state; and (3) to encourage awareness and interest in the management of the fund. 1980 Alaska Sess.Laws Ch. 21 § 1(b).

In 1982, the Supreme Court struck down as violative of equal protection the 1980 Act, finding that no valid state interest supported the payment of increased dividends to long-term residents. *Zobel v. Williams*, 457 U.S. 55, 65, 102 S.Ct. 2309, 2315, 72 L.Ed.2d 672 (1982). Anticipating a possible ruling by the Supreme Court, the Alaska legislature enacted "backstop" legislation, which became operative shortly after *Zobel*, codified at Alaska Stat. §§ 43.-23.005–.095 (1983). The legislature did not amend the stated purposes of the 1980 Act when it adopted the 1982 legislation.

The 1982 Act provided dividends of $1,000 to each eligible resident, including minors.[1] The three appellants sued separately for refunds from the Internal Revenue Service for taxes allegedly erroneously and illegally collected from them. Mary Elizabeth Beattie, a minor, sued through her father, J. Patrick Beattie, for a refund of $44.40 plus interest, costs, and attorney's fees for taxes paid on her 1982 and 1983 dividends, totalling $1,386.15. Her

sister, Catherine Anne Beattie, also a minor, sued through her father for a refund of $57.40, plus interest, costs and attorney's fees for taxes paid on the identical dividend amounts.[2]

David J. Greisen, a minor, sued through his father, Ronald E. Greisen, for the recovery of $2 taxes paid on his 1982 dividend of $1,000, plus interest, costs, and attorney's fees. Each of the three appellants filed timely refund claims with the Internal Revenue Service, all of which were denied.

We review grants of summary judgment *de novo*. *See Bloom v. General Truck Drivers*, 783 F.2d 1356, 1358 (9th Cir.1986). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c).

The taxpayers contend that summary judgment was inappropriate because the crucial issue of donative intent is a question of fact. The taxpayers cite *Commissioner v. Duberstein*, 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960), which held that the determination of an individual's donative intent "must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." *Duberstein*, 363 U.S. at 289, 80 S.Ct. at 1198. *See Olk v. United States*, 536 F.2d 876, 878 (9th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 317, 50 L.Ed.2d 287 (1976).

The trial court properly distinguished *Duberstein* and *Olk* as cases where the property transfers were motivated by interpersonal relations, thus necessitating a factual inquiry into the transferor's state of mind. *Beattie v. United States*, 635 F.Supp. 481, 487 (D.Alaska 1986). By contrast, the state is the transferor in this case, and the task of determining the legislative intent in creating the dividend program presents a question of law, not of fact. *Id.* at 487–88. *See Trustees of*

---

1. To be eligible, a person must have been a state resident for at least six consecutive months preceding the date of application for the dividend, Alaska Stat. § 43.23.005 (1983).

2. Although Catherine Beattie also sued on behalf of a class of all similarly situated individuals, she has not sought class certification and thus represents only herself at this time.

*Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 929 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986) (statutory interpretation is a question of law); *Heard v. Commissioner,* 326 F.2d 962, 965–66 (8th Cir.), *cert. denied,* 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed.2d 746 (1964) (rejecting a taxpayer's claim that the *Duberstein* analysis demonstrated that his government-paid annuities were a gift, based on the court's examination of statutory language and legislative history). "Such statutory interpretation does not involve fact-finding. It involves legal analysis beginning with the plain language of the statute and, where appropriate, consideration of the underlying legislative history."[3] *Beattie,* 635 F.Supp. at 487.

Greisen argues that the trial court erred in finding that the Alaska Permanent Fund dividends constituted income for the purposes of the sixteenth amendment, even if they fall within the definition of income set forth by I.R.C. § 61 (1982). Greisen claims that at the time of the adoption of the sixteenth amendment the term "income" was commonly understood to mean a "coming in" of wealth from a source exterior to the taxpayer. *Beattie,* 635 F.Supp. at 491. He argues that Permanent Fund dividends do not come from an outside source because they derive from the state's natural resources, which already are owned by the people of the state, as its ultimate sovereigns.

■ Accepting arguendo Greisen's premise that the people of Alaska have ultimate sovereignty, we reject his conclusion that the people own the state's natural resources. "In adopting their constitution, the people of the State of Alaska have very clearly constituted the *state* as owner of the natural resources which give rise to the fund in question." *Beattie,* 635 F.Supp. at 491. *See* Alaska Const. Art. VIII, § 1 (proclaiming the state's policy of "encourag[ing] the settlement of *its* land and the development of *its* resources") (emphasis added); Alaska Const. Art. VIII, § 2 (stating that "[t]he legislature shall provide for the utilization, development, and conservation of all natural resources *belonging to the State,* including land and waters, for the maximum benefit of its people") (emphasis added).

■ In any event, Greisen is wrong in arguing that the dividends would not constitute income if the citizens owned the natural resources. The dividends represent interest from the Permanent Fund, which consists of a portion of all mineral lease payments made to the state. Even if the citizens of Alaska owned the principal of the fund, the interest on that principal would constitute gross income and thus would be subject to taxation. *See* I.R.C. § 61(a)(4) (1982) (gross income includes interest). As the trial court observed, if all Alaska citizens owned equal shares of a corporation that leased out the rights to the natural resources of Alaska, they still could be taxed on any dividends paid to them by the corporation. *See* I.R.C. § 61(a)(7) (1982) (gross income includes dividends); *Beattie,* 635 F.Supp. at 492. In short, if we accept Greisen's argument that Alaska citizens own the state's natural resources, we must conclude that the dividends constitute income.

Because we hold that the dividend program payments constitute income, the taxpayers may avoid tax liability here only if the payments are encompassed within one of the Internal Revenue Code's exclusions. *See* I.R.C. §§ 101–131 (1982). The taxpayers argue that the dividends are excludable as gifts.[4] *See* I.R.C. § 102(a) (1982) (ex-

---

3. *American Constitutional Party v. Munro,* 650 F.2d 184 (9th Cir.1981), the sole case relied upon by Griesen for the proposition that the dominant motivation underlying a legislative transfer is a jury question, did not consider this issue and therefore provides no support for his claim. That case involved the propriety of a grant of attorneys' fees.

4. The Beatties make the novel and unsupported argument that we should interpret § 102, which excludes from gross income property acquired by "gift, bequest, devise, or inheritance," as meaning "that a distribution which is in the nature of excess wealth, no longer needed by the donor, and therefore passed on [to] the donee, is excludable from gross income." Given the absence of any indication that Congress in-

cluding gifts from the gross income of donees).

*Duberstein* defines a gift as a transfer resulting from a "detached and disinterested generosity ... out of affection, respect, admiration, charity or like impulses." *Duberstein*, 363 U.S. at 285, 80 S.Ct. at 1197 (citations omitted). A transfer will not be deemed to be a gift if it results from "the constraining force of any moral or legal duty," is given "in return for services rendered," or is given from "the incentive of an anticipated [economic] benefit."[5] *Id.* (citations omitted). For a transfer to be considered a gift, donative intent must be "the dominant reason that explains [the decision] in making the transfer." *Id.* at 286, 80 S.Ct. at 1197.

■ We find that the preamble and the statement of purpose of the 1980 Act demonstrate that the legislature did not intend the dividends to be gifts.[6] The preamble indicates that the dividends were given out of a sense of moral or legal duty:

> It is the duty and policy of the state with respect to the natural resources belonging to it and the income derived from those natural resources to provide for their use, development, and conservation for the maximum benefit of the people of the state.

1980 Alaska Sess.Laws Ch. 21 § 1(a).

The taxpayers argue that the term "duty" applies to the use, development, and conservation of the state's natural resources but not to the disbursement of the proceeds of those resources to the citizens. However, the plain language of the preamble belies the taxpayers' attempt to parse the statute. Furthermore, the preamble is prefatory to the statutes setting forth the

purposes of the dividend program, 1980 Alaska Sess.Laws Ch. 21 § 1(b), and its placement demonstrates that it is applicable to the dividend program.

The taxpayers also claim that the state had no moral or legal duty to issue the dividends, regardless of the language of the preamble. We agree with the trial court that

> [w]hether the obligation felt by the legislature did or did not exist in law or fact, or whether it was a moral obligation or some other kind of obligation, makes no difference. What is important is that the legislature clearly conveyed the notion that it felt constrained—that is, required—to make the payments. Such is not the stuff of which "gifts" are made. Rather than bespeaking a "detached and disinterested generosity," we are left with the clear understanding that the legislature saw itself transferring what was due and owing (although not in a legal sense) to the residents of the State of Alaska.

*Beattie*, 635 F.Supp. at 489 (citations omitted).

Because the legislature did not intend to make a gift, we may not find the dividends to be gifts. *See Duberstein*, 363 U.S. at 284–85, 80 S.Ct. at 1196; *Bogardus v. Commissioner*, 302 U.S. 34, 41, 58 S.Ct. 61, 65, 82 L.Ed.2d 32 (1937).

We find the language of the preamble to be dispositive of the issue of donative intent. Furthermore, we also find that the statement of purpose to the 1980 Act demonstrates that the legislature did not intend to make a gift. According to the statement of purpose, the 1980 Act was intended: (1) to allow equitable distribution of part of

---

tended us to read the statute as we might a common law precedent, we may not adopt the Beatties' interpretation.

**5.** The Beatties argue at length that the general standards provided by *Duberstein* are not satisfactory for analyzing gifts outside of the context of interpersonal relations. They invite us to adopt what they characterize as a "refinement" of *Duberstein* in the *quid pro quo* analysis of gratuitous transfers under I.R.C. § 170, involving gifts made for charitable purposes. *See Singer Co. v. United States*, 449 F.2d 413, 423

(Ct.Cl.1971). No precedent requires us to employ the *quid pro quo* test, and we decline to make such a sweeping change in the law.

**6.** The 1982 Act was adopted without a preamble or a statement of purpose. Because the 1982 Act was enacted as a result of the decision in *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), that the 1980 Act was unconstitutional, we find the language of the 1980 Act to be relevant in determining the intent of the legislature that enacted the 1982 Act.

the state's wealth to Alaskans; (2) to encourage people to remain Alaska residents; and (3) to encourage awareness and interest in the management of the fund. 1980 Alaska Sess.Laws Ch. 21 § 1(b)(1).

The taxpayers, noting that the rationale of equitable distribution is listed first, argue that the legislature considered this purpose most important. They claim that the other two stated goals are merely secondary by-products of the desire to achieve equitable distribution and that the state would have accomplished these goals through more effective means if they had been the primary motivation.

Although the legislature may have acted in part out of "disinterested generosity," we disagree that such donative intent was the "dominant reason" for the dividend program. See Duberstein, 363 U.S. at 285–86, 80 S.Ct. at 1197. The statement of purpose demonstrates that the legislature intended the dividends to bring the state economic benefits resulting from reduced population turnover, as well as less direct benefits arising from increased public awareness of the fund.[7] We may accept the taxpayers' argument that donative intent was dominant only if we make the impermissible assumption that the state legislature included the latter two purposes only as window dressing.[8] We find that the state legislature lacked the donative intent necessary for a transfer to be considered a gift under Duberstein.

The two cases and several revenue rulings relied upon by taxpayers for the proposition that disbursements to individuals by a government entity may constitute gifts were predicated upon findings that Congress had intended to make gifts. See Dewling v. United States, 101 F.Supp. 892, 893–94 (Ct.Cl.1952); United States v. Hurst, 2 F.2d 73, 78 (D.C.Wyo.1924); Rev. Rul. 57–233, 1957–1 C.B. 60, 61; Rev.Rul.

55–609, 1955–2 CB 34, 35. These precedents have no relevance where, as here, the legislature did not intend to make gifts.

The district court properly held that payments received under Alaska's Permanent Fund Dividend Program are subject to federal income tax.

Affirmed.

---

7. We reject the taxpayers' argument that this purpose, although stated in the 1980 Act, is inapplicable to the 1982 Act because the provision differentiating among recipients according to length of residence had been declared unconstitutional by Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). Under the 1982 Act, individuals still have an incentive to remain in the state to collect the yearly dividends.

8. Given the express inclusion of the latter two purposes, we are not swayed by the Beatties' argument that most Alaska legislators understood the purpose of the dividend program to be the distribution of excess oil wealth.